## Appeal of Duquesne Savings Bank.

1. The Act of May 4th 1855 recites additional causes for which a wife shall have all the rights and privileges secured to a feme sole trader under the Act of February 22d 1718. And the second section of the Act of 1855 declares that if the husband of said wife, being the owner of lands, shall mortgage or alienate from his wife and children any of said land, without making an equivalent provision for their maintenance in lieu thereof, such mortgage or alienation shall be deemed null and void: *Held*, that this second section was intended to apply to the wife's property and not to the real estate of her husband.

2. P., who owned a farm, whereon he resided with his wife and family, wilfully deserted them without any provision for their maintenance and never thereafter returned or contributed to their support. Previous to his desertion he had negotiated with M. for a loan, to be secured by a mortgage on the farm, and eight days after the desertion P. received the money and executed the mortgage. It clearly appeared that the mortgage was executed by P. with the intention of its resulting in a judicial sale of the farm and the deprivation of his wife and children of the enjoyment thereof: *Held*, that as the evidence failed to show any want of good faith in the mortgagee, or any notice or knowledge of the desertion or intended fraud, the mortgage was valid..

3. Per MERCUR, J.—Although the mortgagor had been absent from his home for eight days when he executed the mortgage, a fact unknown to the mortgagee, and in regard to which he was not bound to inquire, the mortgage was not therefore made null and void. Such a construction would practically prevent the acceptance of a mortgage unless the wife of the mortgagor was present. It would cause great embarrassment and annoyance in the transaction of business and give an effect to the act never intended by its language nor contemplated by its purpose.

November 16th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

Appeal from the Court of Common Pleas of *Beaver county:* Of October and November Term 1879, No. 367. In Equity.

Bill in equity filed by Susannah Powell, by her next friend, John Harris, against the Duquesne Savings Bank.

The following opinion of Hice, P. J., sufficiently states the case:

" From the bill, answer and evidence in this case, we find the facts to be:

"1. That Susannah Powell, the plaintiff, was intermarried with one Peter Powell some twenty-eight to thirty years since, and had issue by her said husband eight children, six of whom are minors, the youngest of these being now about seven and the eldest about eighteen years of age.

" 2. That Peter, the husband, was the owner of a tract of land, situate in North Sewickley township, Beaver county, containing about 133 acres, on which he resided with his family up till the fall of 1869, when he left them, and was absent for about seven months, returning again and living with them as before for about one year, or until the 14th day of April 1871, when he again left

them, and has never since returned to his family, nor done nor contributed anything whatever for their support and maintenance.

" 3. That there was considerable bickering and domestic difficulty between the husband and wife for a considerable time before the desertion of the wife and family by the husband, and charges of unfaithfulness to her marriage vows were made by the husband against his wife; yet, so far as the evidence discloses, there was no ground for the charges, nor any reasonable cause on the part of the wife for his abandoning his family; but his act in this respect was a wilful and deliberate desertion of them, without any intention on his part of returning again, or discharging the duties of a husband and father.

"4. That since his desertion of his wife and children he has been living in Meigs county, Ohio, with another woman, and claiming to be married to her, but without anything to show that he had obtained a divorce from the present plaintiff, or had any grounds whatever for obtaining one.

" 5. That previous to his desertion of his wife and family said Peter entered into negotiations for a loan of money from one A. A. McCarty, to be secured by a mortgage upon the tract of land above mentioned, which was finally consummated by his executing the mortgage and receiving the money at Pittsburgh, Allegheny county, on the 22d day of April 1871, eight days after his desertion as aforesaid. The amount of money actually received by him on this mortgage is not clearly disclosed by the evidence, but would seem to have been $4500, but might have been more. The amount named in the mortgage, and secured thereby, was $6380. The mortgage itself was duly recorded in the office for recording deeds in and for said county of Beaver; and afterwards, on the 8th day of August 1871, said A. A. McCarty, the mortgagee, by his attorney in fact, assigned the mortgage to the Duquesne Savings Bank, the defendant in this suit, who, having thus become the owner thereof, afterwards, to No. 153 of November Term 1873, issued a scire facias thereon, to which the sheriff made return that on the 4th day of November 1872, he served the same 'on the defendant by making contents known, and leaving a true copy with his wife, in his absence.' There being no appearance by Peter Powell or any one else, and no defence of any kind being taken, judgment was entered on the scire facias against said Peter for $7321. A writ of levari facias issued thereon, and on the 15th day of March 1873, the land was sold by the sheriff, the defendant in this case becoming the purchaser thereof, and receiving a sheriff's deed therefor; and although it does not directly appear in the evidence for what price the land sold, yet it seems to be admitted, and may be taken as a fact, that the price at which it was bid off was less than the amount of the mortgage debt.

"6. That at the time the husband deserted his wife and chil-

[Duquesne Savings Bank's Appeal.]

dren, he left them in possession of the tract of land mortgaged as aforesaid, and also left with them on said farm certain horses, cattle, farming utensils, household goods, &c., all of which, however (except the household goods, which were of small value), were subsequently levied upon and sold by the sheriff for the payment of his (the husband's) debts.

"7. That the husband made no provision of any kind for the maintenance of his wife and children at the time he mortgaged the farm, nor at any time since, it being his intention, as theretofore declared by him, and as his subsequent acts show, to bring about a sale and alienation of the farm from his wife and children by this means, four of said children being of tender years and dependent upon the mother's exertions for their support.

"8. That so far as the present defendant is concerned, it had no notice or knowledge, in any way, at the time the mortgage was assigned, nor does the evidence show that at any time since, until about the date of the filing of the plaintiff's bill in this case, had it notice that said Peter Powell, the mortgagor, had deserted his wife and children prior to the date of his execution of said mortgage, or that the loan was negotiated and the mortgage executed by him for the purpose of procuring thereby a sale of the farm, and alienating the same from his wife and children; nor is there anything to show that McCarty, the mortgagee, had any notice or knowledge of such desertion or intended desertion, or intention to alienate the land, at the time the loan was negotiated and the mortgage given. Mr. Fetterman, who, it appears, was acting as the attorney of McCarty, the mortgagee, and who, it seems, really did all the business for him, it is claimed, had notice of the acts and intention of the husband, and such notice and knowledge as should and would affect his client; but a careful examination of all the evidence fails to furnish anything showing that he had any knowledge on the subject. The facts proven, when properly considered, do not warrant such an inference.

"9. That the negotiation for the loan on the mortgage had been going on between Peter, the husband, and Mr. Fetterman (but without the wife's knowledge) for some time before Peter left, which was on the 14th of April; and the wife, the plaintiff in this case, testifies that she had knowledge of the giving of the mortgage eight or nine days after he left. The mortgage was executed on the 22d of April, so that she had knowledge of the mortgage almost immediately after the same was given. The scire facias issued on the mortgage was served by making contents known and giving a true copy thereof to the wife, the plaintiff here, on the 4th November 1872. No defence was taken by her, nor anything done to notify the defendants that she objected to the mortgage, or would contest the same. Subsequently a levari facias issued, the land was levied upon and sold after being duly advertised, of all

which proceedings she had notice before the day of sale, which was on the 15th March 1873. No notice of her alleged right was given, nor any objection to the sale or to the acknowledgment of the sheriff's deed was made.

"10. That after having purchased the land, the defendant, on the 19th of June 1875, gave notice, under the Act of Assembly, for the purpose of obtaining possession, and it was not till subsequent to this, or about the date of filing the bill, August 2d 1875, so far as the evidence shows, that defendant had any notice of the claim of plaintiff that the mortgage was void, and that she claimed on this ground to hold the land, of which she is still in possession. It is true, however, that the plaintiff sought legal advice after the mortgage was given and before the sale, but was advised that nothing could be done—that the mortgage would have to be paid; and subsequently, when the land was about to be sold, it seems she employed an attorney, directing him to give notice of her claim at the sale; but no notice, so far as the evidence shows, was given, and after this no further steps were taken by her in the matter until after notice served upon her to give possession of the land.

"11. That said plaintiff has no estate of her own, or in her own right, nor any means of support for herself and minor children, the children of said mortgagor, except as derived from the tract of land aforesaid.

"The facts being as thus stated, it is claimed on behalf of the plaintiff that the mortgage was void, under the provisions of the Act of Assembly of the 4th of May 1855, sect. 2, extending the provisions of the Act of February 22d 1718, relating to feme sole traders, to the case where "any husband, from drunkenness, profligacy, or other cause, shall neglect or refuse to provide for his wife, or shall desert her," the second section of which last mentioned act declares that if the husbands of any wives, declared by the first action thereof to be feme sole traders, being the owners of lands, tenements, or other estate within the province, have aliened or thereafter shall give, grant, mortgage, or alienate from his wife and children any of said lands and tenements or estates, without making an equivalent provision for their maintenance in lieu thereof, every such gift, grant, mortgage, or alienation shall be deemed, adjudged, and taken to be null and void. Peter Powell, the husband, had, at the date of the execution of the mortgage, withdrawn himself from his wife and family; there was yet upon the farm, and which might be used by them, certain property that furnished them the means of support for the time being (but which was soon swept away by the sheriff's sale to satisfy the debts of the husband), but his desertion of his home and family was complete. It would seem evident, therefore, that his acts toward his wife and family were such as clearly brought the wife within the provisions of the Act of 1855, and entitled her to whatever benefits were

[*Duquesne Savings Bank's Appeal.*]

secured thereby. These benefits were that she should have all the rights and privileges secured to wives declared feme sole traders under the Act of 1718. One of these rights and privileges secured to a wife declared a feme sole trader by that act, as shown by the second section, was that she and his children should have the use of the husband's real estate within the province, for their maintenance, and that any gift, grant, mortgage, or alienation thereof by the husband that deprived them of this, without an equivalent provision for their maintenance, should be deemed, adjudged, and taken to be void. The negotiations for the loan were begun before he left his family, but his desertion was complete for some time before the same were consummated, and the mortgage executed. The case seems to fall fully within the provisions of the Act of 1718, as extended by the Act of 1855. There does not seem to be any reported case giving judicial construction to this portion of these statutes, yet if they are to be effectual in promoting the purpose that seems to have prompted their enactment, the protection of wives and children from the recklessness, profligacy, or maliciousness of those whose duty it is to protect and maintain them, it seems to us they must be construed to embrace such cases as the present one, and that this mortgage must be held to be avoided thereby. It is urged that, although it be held that this mortgage falls within the statute, and is therefore declared void, yet as judgment was obtained and a sale effected, of all which the plaintiff had notice, but to which she did not object, it is now too late to urge any objection, and she is estopped from asserting the invalidity of the mortgage, or the title of the defendant. If, however, the statute avoids the mortgage, we do not see how any proceedings thereon, even with her knowledge, unless they were promoted or in some way furthered or encouraged by her, should stop her. She was not a party in any way to the proceedings; she merely remained silent—did nothing—but in this there was no fraud on her part. So long as she was not actually disturbed in possession of the land, we do not perceive any duty on her part to take any measures to have the mortgage declared void. It undoubtedly is a hardship to defendant to lose what was supposed to be an ample security for its money, especially as there seems to have been no bad faith on its part, no knowledge of the desertion by the husband, the mortgagor, nor of his intention by this means to alienate the land from his wife and family, leaving them without the means of maintenance, but we do not see how it is possible to avoid this, and at the same time secure to the wife and children that protection which it was the design of the statutes to afford. So far as the present defendant is concerned, an inquiry at the date of the assignment would no doubt have led to a knowledge of the desertion; and the same may be said of the mortgagee. An inquiry at the date of the mortgage, properly directed, would have revealed the

[Duquesne Savings Bank's Appeal.]

same facts, which it is now claimed render the mortgage void. We conclude, therefore, that the defendant cannot legally disturb the plaintiff in her possession of the land, and that the mortgage should be held as void.

" Let a decree be prepared accordingly."

The following was the decree:

1. That the mortgage from Peter Powell to A. A. McCarty, more particularly described in the plaintiff's bill, be and hereby is declared utterly null and void.

2. That the said defendants be and hereby are perpetually enjoined from setting up any title to the land described in said mortgage, under and by virtue of said mortgage, or the proceedings at. law and the sheriff's deed mentioned in said plaintiff's bill; and are also perpetually enjoined from interfering (under and by virtue of any title derived or claimed from, by, or under said mortgage, proceedings and deed), with the possession, use, and enjoyment of said land by the plaintiff and her children.

From this decree this appeal was taken.

*S. B. Wilson* and *A. M. Brown*, for appellant.—We contend that the decree was erroneous, because—1. The Act of May 4th 1855, entitled, "An Act relating to certain duties and rights of husband and wife and parents and children," does not confer upon a deserted wife the right asserted by Mrs. Powell in this suit. 2. The judicial proceedings upon the mortgage, of which the plaintiff had actual notice, and to which she made no defence or objection, conclude her, and cannot be avoided in this collateral suit. 3. The silence and acquiescence of plaintiff was a fraud upon the mortgagee and his assignee, the plaintiff in error; therefore she is estopped from asserting her alleged right under the Act of May 4th 1855. 4. The judgment on the mortgage, and the title acquired under it, were conclusive against Peter Powell, if not so against his wife; therefore the decree was erroneous in that it perpetually enjoined the defendant from setting up any title to the land.

*Frank Wilson* and *John J. Wickham*, for appellee.—We claim that under the Act of 1855 the rights and privileges of a married woman deserted by her husband, or left unprovided for by him, are more extensive than her liabilities: Cleaver *v.* Scheetz, 20 P. F. Smith 496; Husbands on Married Women 127 ; Hyde *v.* Hesser, 3 Phila. R. 508 ; Hentz *v.* Clawson, 34 Leg. Int. 5. The construction contended for by the plaintiff in error would reverse this rule. The Act of 1855 is remedial, and it is to be beneficially expounded in favor of the wife. Those who trust a husband who has by his prodigality or desertion placed his wife and children in a position to claim the benefits of this act do so at their

[*Duquesne Savings Bank's Appeal.*]

own peril: Black et al. *v.* Tricker, 9 P. F. Smith 13; Conly et ux. *v.* Bentley, 6 Norris 40. But we contend that the desertion of Powell did not make her *sui juris ;* that whilst entitled to the rights and privileges of a woman deserted by her husband as secured by the Act of 1855, her disabilities remain undisturbed. She could not be estopped by her acts whilst in possession of the land, especially as she did nothing inconsistent with her rights calculated to mislead any one. She could do or forbear to do no act to affect her own property unless settled to her separate use. The doctrine of estoppel as against a married woman "is contrary to principle enforced by a vast volume of authority, destructive of the rights of married women, and is as clearly denied by equity as it is forbidden by law :" Glidden *v.* Strupler, 2 P. F. Smith 400, 407; Brown *v.* Bennett, 25 Id. 420; Innis *v.* Templeton, 14 Norris 262.

Mr. Justice MERCUR delivered the opinion of the court, January 3d 1881.

The appellant purchased the land in question at a sheriff's sale made by virtue of an execution issued on a judgment obtained on a mortgage executed by the owner of the land. This bill is by the wife of the mortgagor. She prayed that the mortgage be declared utterly null and void, and that the appellant be perpetually enjoined from setting up any title to the land under said mortgage. Under the facts found by the learned judge, who also acted as master, he decreed substantially as prayed for in the bill. This is assigned for error.

Peter Powell, the husband of the appellee, executed this mortgage after he had deserted and abandoned her and his home without making suitable provision for the maintenance of his wife and children. The judge held this made the mortgage null and void under the second section of the Act of 22d February 1718, 1 Smith L. 99, and the second section of the Act of 4th May 1855, Pamph. L. 430.

The facts necessary to a proper understanding of the case are these. On the 14th April 1871, Powell left his home and family on the farm in Beaver county, where he and they had been residing for a year or more, and never returned nor contributed anything thereafter to their support and maintenance. It was a wilful desertion without any just cause and without any intention of returning. He has since been living with another woman as his wife in Ohio. Prior to this desertion he had entered into negotiations with one McCarty for a loan of money to be secured by mortgage on this farm. Before closing it the attorney of McCarty went out and examined the farm. Powell and his family were living together on it. The arrangement was closed by his executing the mortgage and receiving the money in Pittsburgh on the 22d April 1871. He left his family

[Duquesne Savings Bank's Appeal.]

in possession of the farm, and of personal property consisting of horses, cattle, farming implements, household goods, &c.   All this personal estate except the latter was levied on and sold for the payment of his debts.   He executed the mortgage with the intention of its resulting in a sale of the farm and depriving his wife and children of the enjoyment thereof.   The court, however, has found there is no evidence " to show that McCarty, the mortgagee, had any notice or knowledge of such desertion or intended desertion, or intention to alienate the land at the time the loan was negotiated and the mortgage given," nor is there any evidence that his attorney who transacted all the business "had any knowledge on the subject."   The mortgage was assigned to the appellant on the 8th August 1871.   Scire facias afterwards issued was served on the appellee, no appearance being entered or defence made, judgment was taken by default.   This was followed by execution, sheriff's sale, and due execution and acknowledgment of deed to the appellant.   It had no knowledge of any fact calculated to impair the validity of the mortgage when it was assigned by McCarty; nor at any time since, until about the time this bill was filed.   The appellee testified to some meritorious reasons as an excuse for her laches ; but to none that were brought to the knowledge of the appellant or that affects its legal rights.

The title of the Act of 22d February 1718, is " An Act concerning feme sole traders."   In its preamble, and in every section, it refers to cases where mariners and others, whose circumstances as well as vocations oblige them to go to sea, leaving their wives in a way of shop-keeping, " or to work for their livelihood at any other trade."   It then proceeds to express and declare two purposes. The first, and main one is, that the wives of such absent husbands shall be as feme sole traders, and substantially shall enjoy all the rights, privileges and powers incident thereto or that flow therefrom. The other a denial of power to such absent husband to sell or mortgage his lands without making an equivalent provision for the maintenance of his family.

Thus the Act of 1718 dealt only with cases where the husband had gone to sea and allowed the wife to deal in and manage personal property.   The second section of the Act of 4th May 1855 states other causes for which a wife shall have all the rights and privileges secured to a feme sole trader under the Act of 1718.   She shall have them whenever her husband from drunkenness, profligacy or other cause, shall neglect or refuse to provide for her or shall desert her.   The section then proceeds to enlarge the subject-matter to which her powers shall apply.   It declares " her property real and personal howsoever acquired shall be subject to her free and absolute disposal during life, or by will, without any liability to be interfered with or obtained by such husband, and in case of her intestacy shall go to her next of kin as if he were previously dead."

15 NORRIS—20

[Duquesne Savings Bank's Appeal.]

Thus it appears her rights and powers to enjoy, sell, devise and transmit, her own property are enlarged; but no reference whatever is made to his lands or to restricting his powers in regard thereto. The first section of the act restricts the right of a married woman in devising all her property to the prejudice of her husband. The third specifies under what circumstances she shall have all the rights of a father over their children. The fourth provides the manner in which she may obtain a decree of the court affirming her power to transact business. The fifth states certain acts of the husband which shall exclude him from claiming any right or title in the real or personal estate of his deceased wife, as tenant by the courtesy or under the intestate laws. The sixth states what act of the father towards his child shall bar his right to appoint a testamentary guardian for said child.

We have thus briefly referred to the whole act to show that in no part thereof does it profess to legislate in regard to his real estate. The second section can have a fair, just and reasonable effect given to its language by holding, as we do, that it was intended to apply to the wife's property and not to the real estate of her husband.

Every part of this transaction shows entire good faith in the mortgagee and in the purchaser. The examination of the farm, which induced the acceptance of the mortgage, was made a few weeks only before its execution. Although the mortgagor had been absent from his home and family for eight days when he executed it, a fact unknown to the mortgagee, and in regard to which he was not bound to inquire, the instrument was not thereby made null and void. Such a construction would practically prevent the acceptance of a mortgage, unless the wife of the mortgagor was present. It would cause great embarrassment and annoyance in the transaction of business, and give an effect to the act never intended by its language nor contemplated by its purpose.

Decree reversed, and the bill of the complainant is dismissed at her costs.